IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| STEVEN J. STRELZIK and HOLLY H. STRELZIK, | * * * | |
| Plaintiffs, | * * | |
| v. | * * | 1:17-CV-03202-ELR |
| U.S. BANK NATIONAL ASSOCIATION, *as trustee, successor in interest to Bank of America, National Association, as successor by merger to LaSalle Bank, National Association as trustee for Certificateholders of EMC Mortgage Loan Trust 2001-A, Mortgage Pass-Through Certificates, Series 2001-A*, SELECT PORTFOLIO SERVICING, INC., and MCCALLA RAYMER LEIBERT PIERCE, LLC, | * * * * * * * * * * * * | |
| Defendants. | * * | |

# ORDER

Plaintiffs Steven and Holly Strelzik brought this action against Defendants U.S. Bank National Association as Trustee, Successor in Interest to Bank of America, National Association, as Successor by Merger to LaSalle Bank, National Association as Trustee for Certificateholders of EMC Mortgage Loan Trust 2001-

A, Mortgage Pass-Through Certificates, Series 2001-A ("U.S. Bank" or "Trustee"), Select Portfolio Servicing, Inc. ("Select Portfolio"), and McCalla Raymer Leibert Pierce, LLC ("McCalla Raymer") asserting breach of contract and quiet title. There are currently several matters pending before the Court. The Court sets forth its rulings and conclusions below.

## I. Background

### a. Factual Background

As alleged in the Complaint, Plaintiffs acquired the real property and improvements located at 570 Londonberry Road, Atlanta, Fulton County, Georgia (the "Property") on or about August 18, 1988. Compl. at ¶ 9. In connection with the purchase of the Property, Plaintiffs borrowed $219,300.00 from Georgia Federal Bank, FSB ("Georgia Federal"). Id. at ¶ 10. Plaintiffs executed a promissory note (the "Note") and security deed (the "Security Deed") in favor of Georgia Federal. Id. That Security Deed appears in the official records of the Superior Court of Fulton County, Georgia in Deed Book 11824, Page 301. Id.

Subsequent to the date of Plaintiffs' execution of the Security Deed, Georgia Federal assigned its right, title, and interest in and to the Security Deed to EMC Mortgage Corporation. Almost one year later, EMC Mortgage Corporation assigned the Security Deed to LaSalle Bank, National Association as Trustee for Certificateholders of EMC Mortgage Loan Trust Series 2001-A ("LaSalle" or

2

"Lender"). Id. at ¶ 11. The Georgia Federal assignment was not recorded and did not appear in the official records of the Superior Court of Fulton County, Georgia until October 26, 2009. Id. Plaintiffs allege that the Georgia Federal assignment was not signed in accordance with Georgia law. Id.

The Security Deed contains, *inter alia*, the following language about default:

> NON-UNIFORM COVENANTS Borrower and Lender further covenant and agree as follows:
>
> 19. Acceleration; Remedies. Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under paragraphs 13 and 17 unless applicable law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the nonexistence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale granted by Borrower and any other remedies permitted by applicable law.

Security Deed at ¶ 19 [Doc. 1-1, Ex. B]. In April 2003, Plaintiffs were given notice that their Lender was accelerating their loan due to a default. Compl. at ¶¶ 13-16. Plaintiffs allege that their Lender had already begun advertising the Property for foreclosure sale, as of the date of the April 2003 letter. Id. at ¶ 14.

3

That foreclosure was ultimately withdrawn, and Plaintiffs' Lender agreed to accept $30,408.00 to reinstate the Note and Security Deed and to withdraw the foreclosure proceeding. Id. at ¶ 19. Plaintiffs delivered a letter to their Lender confirming the agreement that this reinstatement payment would terminate the foreclosure proceeding against the Property and bring Plaintiffs' account with the Lender current. Id. at ¶ 20.

A second notice of acceleration was issued on or about August 7, 2003, and foreclosure proceedings were reinstituted. Id. at ¶¶ 24-25. On or about January 5, 2004, Plaintiffs filed a Complaint for Wrongful Foreclosure, Injunctive Relief, and a Temporary Restraining Order in the Superior Court of Fulton County, Georgia. Id. at ¶ 26.

To resolve that lawsuit, Plaintiffs entered into a Settlement Agreement and Release (the "Settlement Agreement") with LaSalle Bank National Association as Trustee for Certain Mortgage Holders of EMC Mortgage Loan Trust Series 2001-A and EMC Mortgage Corporation (collectively, "EMC"), McCurdy & Candler, LLC, and Anthony DeMarlo. Id. at ¶ 29; Settlement Agreement and Release [Doc. 1-1, Ex. D]. The Settlement Agreement provided that Plaintiffs were to be deemed current and no longer in default under the loan as modified. Id. at 30. Paragraph 7 of the Settlement Agreement provides:

> EMC hereby agrees to submit, within a reasonable time after the Settlement Date, but not longer than sixty (60) days after the

4

>  Settlement Date, to the credit reporting agencies to which EMC reports, Equifax, Experian and TransUnion (the "Credit Reporting Agencies") a report deleting all references to the Loan as in foreclosure and any negative credit comments in connection with the Loan, replacing them with the notation that the Loan was in dispute and that the dispute has been resolved.

Settlement Agreement and Release at ¶ 7 [Doc. 1-1, Ex. D].

As another part of the Settlement Agreement, Plaintiffs entered into a Loan Modification Agreement that amended and supplemented the Note and Security Deed. Compl. at ¶ 31; Settlement Agreement and Release at ¶ 7 [Doc. 1-1, Ex. D]; Deferred Payment Rider (Loan Modification) [Doc. 1-1, Ex. E]. Under the terms of the Loan Modification Agreement, Plaintiffs were required to make 360 monthly principal and interest payments in the amount of $1,185.05 on the first day of each month, beginning on July 1, 2006, as well as additional principal payments of $303.50. Deferred Payment Rider (Loan Modification) [Doc. 1-1, Ex. E]. Plaintiffs also agreed to pay the entirety of any amount remaining due on June 1, 2036. Id.

Plaintiffs began making monthly payments as required under the Settlement Agreement. Compl. at ¶ 32. Plaintiffs contend that EMC "failed to notify the Credit Reporting Agencies as required pursuant to the Settlement Agreement and incorrectly continued to demand payment inconsistent with the amounts set out in the Settlement Agreement." Id. at ¶ 33. Plaintiffs repeatedly requested, to no avail, that the EMC Certificate Holders take the actions required of them by the

5

Settlement Agreement. Id. at ¶ 34. Plaintiffs thus "offset" the monthly payments due on the Loan "by amounts Plaintiffs were required to pay due to the EMC Certificate Holders having breached the Settlement Agreement." Id. at ¶ 37.

Plaintiffs allege that they are not in default under the terms of the Settlement Agreement, the Loan Modification Agreement, and the Security Deed. Id. at ¶ 42. Plaintiffs have requested that U.S. Bank, Chase Bank, and EMC review and respond to Plaintiffs' allegations, but, according to Plaintiffs, no party with authority to review and respond to Plaintiffs' allegations has contacted Plaintiffs. Id. at ¶ 43.

In the interim, foreclosure of the Property has been advertised multiple times. Id. at ¶¶ 41-51. Plaintiffs filed additional lawsuits in October 2015 and March 2016. Id. at ¶¶ 44, 52. Each time, the parties terminated the foreclosure sale and Plaintiffs dismissed the action. Id. at ¶¶ 49, 51.

Defendant Select Portfolio began servicing the Note and Security deed on March 1, 2017. Id. at ¶ 52. Select Portfolio contacted Plaintiffs regarding hardship application rights, but Plaintiffs were unable to access the hardship package and did not complete it. Id. at ¶¶ 53-55. Plaintiffs explained to Select Portfolio that EMC had breached the Settlement Agreement, and that the monetary damages suffered by Plaintiffs as a result of the breach offset amounts Plaintiffs originally owed EMC. Id. at ¶ 53. Plaintiffs allege they were unable to reach Select

6

Portfolio's assigned relationship manager, and Select Portfolio told Plaintiffs that foreclosure procedures were begun again. Id. at ¶¶ 55-56.

Plaintiffs filed a Complaint against Defendants Trustee, Select Portfolio, and McCalla Raymer in the Superior Court of Fulton County, Georgia.[1] Plaintiffs assert claims for breach of contract, and attorneys' fees and costs against Defendants Select Portfolio and Trustee. Id. at ¶¶ 58-61. Plaintiffs allege a claim for quiet title against Trustee. Id. at ¶¶ 62-67. Plaintiffs bring a claim for injunctive relief and a temporary restraining order ("TRO") against all Defendants.[2] Id. at ¶¶ 68-72. Finally, Plaintiffs assert a claim for attorneys' fees and costs against Defendants. Id. at ¶¶ 73-74. Select Portfolio then removed the action to this Court. [Doc. 1].

b. Procedural History

The lengthy procedural history of this case is as follows. As stated above, on June 5, 2017, Plaintiffs filed their complaint against Defendants in the Superior Court of Fulton County, Georgia. Compl. [Doc. 1-1]. On August 23, 2017, Defendant Select Portfolio removed this action to this Court. [Doc. 1]. On August 30, 2018, Defendants McCalla Raymer and Select Portfolio each filed a motion to dismiss Plaintiffs' complaint. [Docs. 6, 9]. Plaintiffs did not respond to either of

---

[1] There is no evidence in the record that Defendant Trustee has been served with the Summons and Complaint in this action. Defendant Trustee has not appeared in this matter, except solely to oppose Plaintiffs' request for injunctive relief. See [Doc. 16 at 2].
[2] As discussed more fully, *infra*, Plaintiffs assert a claim for injunctive relief against McCalla Raymer but not a separate cause of action.

Defendants' motions, but on September 25, 2017, Plaintiffs filed a motion to remand [Doc. 10]. One week later, Plaintiffs filed an Emergency Motion for Preliminary Injunction and Motion for Temporary Restraining Order. [Doc. 13]. On November 3, 2017, the Court set a hearing for November 7, 2017 on Plaintiffs' emergency motion for injunctive relief. [Doc. 14]. On November 6, 2017, the Court issued an Order denying Plaintiffs' Motion to Remand. [Doc. 15]. On November 7, 2017, the date of the hearing on Plaintiffs' motion for injunctive relief, Plaintiff Steven Strelzik informed the Court via email correspondence that he filed for bankruptcy and requested that the Court cancel the hearing. The Court cancelled the hearing. Plaintiffs made no further filings with the Court.

On April 10, 2018, the Court issued an Order directing Plaintiffs to file a Notice of Bankruptcy within seven (7) days. [Doc. 20]. The Court also noted that Plaintiffs had not yet responded to the two pending motions to dismiss and warned Plaintiffs that failure to respond would indicate that there was no opposition to the motions. [Id. at 2 (citing LR 7.1B, NDGa)]. Plaintiffs did not file a Notice of Bankruptcy by April 17, 2018, the deadline set by the Court. Instead, on April 19, 2018, two days after the deadline to file a Notice of Bankruptcy, Plaintiffs filed a Motion for Extension of Time, requesting additional time to respond to the Court's April 10, 2018 Order. [Doc. 21]. Defendant McCalla Raymer filed a response in opposition to this motion, arguing, among other things, that Plaintiffs' motion was

untimely and Plaintiffs did not provide any explanation for their failure to file their motion within the time period set forth in the Court's April 10, 2018 Order. For the well-stated reasons in Defendant McCalla Raymer's response, the Court denies Plaintiffs' Motion for Extension of Time [Doc. 21].

On April 30, 2018, thirteen days after the Court's deadline, Plaintiffs filed a Notice of Bankruptcy. [Doc. 24]. Not only is this Notice past due, but Plaintiffs state that they filed their bankruptcy petition on or about April 30, 2018. [Doc. 24 at 2]. Plaintiffs cannot end run the procedures of this Court by filing for bankruptcy as a reaction to the Court's April 10, 2018 Order. Plaintiffs informed the Court on November 7, 2017, that they were in bankruptcy proceedings. Plaintiff Steven Strelzik did in fact file a bankruptcy petition on November 7, 2017, case number 17-69560-lrc. However, that bankruptcy action was dismissed on November 21, 2017, re-opened on January 17, 2018, and then closed again on March 22, 2018. The Court takes judicial notice of these facts from the bankruptcy docket; Plaintiffs did not update the Court with this information. There has been no action in that proceeding since March 2018. Thus, for purposes of this action, Plaintiffs are not in bankruptcy proceedings such that this case must be stayed.

Because this matter is not stayed due to the pendency of bankruptcy proceedings, the Court will now consider the pending motions to dismiss.

## II. Discussion

On August 30, 2017, Defendants McCalla Raymer and Select Portfolio each filed a motion to dismiss Plaintiffs' Complaint. [Docs. 6, 9]. Plaintiffs have not filed a response to either motion. Accordingly, Defendants' motions to dismiss are deemed unopposed. See LR 7.1B, NDGa. Nevertheless, the Court considers the merits of Defendants' arguments presented in their motions to dismiss. See Giummo v. Olsen, 701 F. App'x 922, 925 (11th Cir. 2017).

### a. Legal Standard

A complaint should be dismissed pursuant to Rule 12(b)(6) only where it appears that the facts alleged fail to state a "plausible" claim for relief. Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555-56 (2007); Fed. R. Civ. P. 12(b)(6). The plaintiff need only give the defendant fair notice of the plaintiff's claim and the grounds upon which it rests. See Erickson v. Pardus, 551 U.S. 89, 93 (2007); Fed. R. Civ. P. 8(a). In ruling on a motion to dismiss, the court must accept the facts alleged in the complaint as true and construe them in the light most favorable to the plaintiff. See Hill v. White, 321 F.3d 1334, 1335 (11th Cir. 2003).

A claim is plausible where the plaintiff alleges factual content that "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). A plaintiff is not required to provide "detailed factual allegations" to survive dismissal, but

the "obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Twombly, 550 U.S. at 555 (internal quotation and citation omitted). The plausibility standard requires that a plaintiff allege sufficient facts "to raise a reasonable expectation that discovery will reveal evidence" that supports the plaintiff's claim. Id. at 556. A complaint may survive a motion to dismiss for failure to state a claim even if it is "improbable" that a plaintiff would be able to prove those facts and even if the possibility of recovery is extremely "remote and unlikely." Id.

    b. Defendant McCalla Raymer's Motion to Dismiss

Defendant McCalla Raymer moves to dismiss Plaintiffs' Complaint, arguing that the Complaint is entirely devoid of any allegations or facts as to Defendant McCalla Raymer and, accordingly, Plaintiffs have failed to state a claim against Defendant McCalla Raymer. The Court agrees.

As set forth in the Court's November 6, 2017 Order [Doc. 15], Plaintiffs never mention any specific allegations of wrongdoing against McCalla Raymer and there is "no reasonable possibility that Plaintiffs can establish a cause of action against McCalla Raymer." [Doc. 15 at 10]. The Court need not repeat its analysis supporting its finding that Defendant McCalla Raymer was fraudulently joined in this action. Rather, the Court incorporates herein its findings from its November 6,

2017 Order. [Doc. 15]. Accordingly, because Plaintiffs do not allege any violations against Defendant McCalla Raymer and cannot state a plausible claim for relief against Defendant McCalla Raymer, the Court dismisses Plaintiffs' Complaint against Defendant McCalla Raymer.

Defendant McCalla Raymer also requests that "McCalla Raymer be discharged with all costs taxed to Plaintiff[s] and that the attorneys' fees incurred by McCalla Raymer in defending this action be cast against Plaintiff[s.]" [Doc. 6 at 2]. The "American Rule" prohibits litigants from collecting attorneys' fees from losing parties absent a statutory or contractual provision. Alyeska Pipeline Serv. Co. v. Wilderness Soc'y, 421 U.S. 240, 247 (1975). Defendant McCalla Raymer has shown no statutory or contractual provision and the Court finds none. Thus, the Court denies Defendant McCalla Raymer's request for attorneys' fees and costs.[3]

    c. Defendant Select Portfolio's Motion to Dismiss

Defendant Select Portfolio moved to dismiss Plaintiffs' claims arguing that Plaintiffs have not stated any plausible claim against Select Portfolio upon which relief can be granted. Plaintiffs assert the following claims against Defendant

---

[3] Defendant McCalla Raymer also filed a Motion to Stay Discovery and Pretrial Deadlines pending the Court's decision on its motion to dismiss. [Doc. 7]. The Court denies as moot Defendant McCalla Raymer's motion to stay. [Doc. 7].

Select Portfolio: breach of contract, injunctive relief and a temporary restraining order, and attorneys' fees and costs.

### i. *Breach of Contract*

Defendant Select Portfolio argues that Plaintiffs do not and cannot state a breach of contract claim against it because Plaintiffs and Defendant Select Portfolio do not have a contract.

"The elements for a breach of contract claim in Georgia are the (1) breach and the (2) resultant damages (3) to the party who has the right to complain about the contract being broken." Uhlig v. Darby Bank & Trust Co., 556 F. App'x 883, 887 (11th Cir. 2014) (internal punctuation omitted) (quoting Norton v. Budget Rent A Car Sys. Inc., 705 S.E.2d 305, 306 (Ga. Ct. App. 2010)). "A breach occurs if a contracting party repudiates or renounces liability under the contract; fails to perform the engagement as specified in the contract; or does some act that renders performance impossible." UWork.com, Inc. v. Paragon Techs., Inc., 740 S.E.2d 887, 893 (Ga. Ct. App. 2013) (citation omitted). "[T]o assert a claim for breach of contract, the party against whom the claim is brought must have been a party to the contract." Uhlig, 556 F. App'x at 887 (citation omitted). In other words, "[a] contract . . . must exist before someone can breach it[.]" Id.

Select Portfolio is not a party to the mortgage loan or security deed, and Plaintiffs have not alleged that they otherwise had any contractual relationship with

Select Portfolio of any sort. Plaintiffs do not allege that there was any assignment to Select Portfolio, but only allege that Select Portfolio is the servicer of the loan. See Compl. at ¶ 52. "As a loan servicer, [Select Portfolio] is not a party to or an assignee of the Note itself and in the absence of a contract between [Plaintiffs] and [Select Portfolio], [Plaintiffs'] breach of contract claim fails." Favors v. Select Portfolio Servicing, Inc., Civil Action File No. 3:14-cv-00190-TCB-RGV, 2015 WL 11557583, at *8 (N.D. Ga. June 18, 2015), R&R adopted, 2015 WL 12434466 (N.D. Ga. July 8, 2015) (internal punctuation and citation omitted); see also Edwards v. Ocwen Loan Servicing, LLC, 24 F. Supp. 3d 21, 28 (D.D.C. 2014) (citations omitted) ("Judges around the country . . . have held that a loan servicer, as a lender's agent, has no contractual relationship or privity with the borrower and therefore cannot be sued for breach of contract."). Accordingly, Plaintiffs' breach of contract claim against Select Portfolio must be dismissed.

        ii. *Equitable Relief*

Count Three of Plaintiffs' Complaint is for injunctive relief and a TRO. Plaintiffs argue that they are entitled to a TRO, an interlocutory injunction, and a permanent injunction preventing Defendants from proceeding with a foreclosure sale of Plaintiffs' Property which was scheduled for Tuesday, June 6, 2017, and from instituting non-judicial foreclosure proceedings in the future. Compl. at ¶¶ 69, 72. Because the Court dismisses the claims against Defendants, there are no

remaining claims on which to grant injunctive relief and Plaintiffs' claims for injunctive relief fail. Even so, the June 6, 2017 foreclosure sale did not occur. Accordingly, Plaintiffs' request for injunctive relief stopping the June 2017 foreclosure sale would be moot.

Finally, Plaintiffs request attorneys' fees and costs in Count Four of their Complaint. Plaintiffs do not cite to any law or contractual clause in support of their request for fees. Due to the language contained in Count Four, however, the Court interprets Plaintiffs' request as proceeding pursuant to O.C.G.A. § 13-6-11. Because Plaintiffs claims are due to be dismissed, their claim for fees and costs also fails. See Lee v. Georgia Power Co., 675 S.E.2d 465, 468 (Ga. Ct. App. 2009) ("An award of attorney fees and expenses of litigation under O.C.G.A. § 13-6-11 is ancillary, and a party may recover them only if [he recovers] on another claim.")

Accordingly, the Court grants Defendant Select Portfolio's motion to dismiss and dismisses Plaintiffs' claims against Defendant Select Portfolio.

d. Defendant U.S. Bank

Plaintiffs named Defendant U.S. Bank in their Complaint. However, Plaintiffs have not filed proof of service of process upon Defendant U.S. Bank, and there is no evidence in the record that demonstrates that Plaintiffs have properly served Defendant U.S. Bank. Accordingly, the Court dismisses without prejudice this action against Defendant U.S. Bank. See FED. R. CIV. P. 4(m).

    e. <u>Plaintiffs' Emergency Motion for Temporary Restraining Order and Temporary Injunction</u>

Having found that the case is due to be dismissed, the Court denies as moot Plaintiffs' Emergency Motion for Temporary Restraining Order and Temporary Injunction. [Doc. 13].

## III.  Conclusion

For the reasons stated herein, the Court **GRANTS** Defendant McCalla Raymer Leibert Pierce, LLC's Motion to Dismiss Plaintiff's Complaint [Doc. 6], **DENIES AS MOOT** Defendant McCalla Raymer's Motion to Stay Discovery and Pre-Trial Deadlines [Doc. 7], **GRANTS** Defendant Select Portfolio Servicing, Inc.'s Motion to Dismiss Plaintiff's Complaint [Doc. 9], **DENIES AS MOOT** Plaintiffs' Emergency Motion for Temporary Restraining Order and Temporary Injunction [Doc. 13], and **DENIES** Plaintiffs' Motion to Extend Time [Doc. 21]. Accordingly, the Court **DISMISSES** Plaintiffs' Complaint and **DIRECTS** the Clerk to close this case.

**SO ORDERED**, this 13th day of June, 2018.

*Eleanor L. Ross*
Eleanor L. Ross
United States District Judge
Northern District of Georgia